[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brought this action on May 30, 2000, seeking temporary and permanent injunctions and damages. The matter was heard on the issue of a permanent injunction on October 6, 2000.
The plaintiff has filed a one-count complaint against the defendant alleging a violation of C.G.S. § 13a-138. Said statute provides, in relevant part,
 a. persons authorized to construct or repair highways may make or clear any water course or place for draining of the water therefrom into or through any person's land so far as necessary to drain off such water and, . . .
 b. Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house . . .
The defendant denies that it drained water onto the plaintiff's land, and denies that it violated the provisions of the above statute. The defendant further claims that any movement of water from the road surface onto the plaintiff's property first occurred more than fifteen years ago, thus, the plaintiff's claim is barred by the applicable statute of limitations.
 Facts
The court finds that the plaintiff has proven through testimony of the plaintiff, her husband and the plaintiff's engineer, Mark Goodin, that the drainage problem began in 1994, and worsened to the present time, causing erosion and nuisance to the property. Good in testified that the drainage problem was caused by the configuration of the drainage system of Lake Shore Drive, which the defendant maintains. The defendant offered no evidence that there was no drainage problem at the present time or that CT Page 13010 it began before 1994. The evidence presented by photographs and videotapes showed that the drainage caused substantial erosion and destroyed the plaintiff's property in many respects. The question was whether the road had changed so as to cause the flooding from 1994 on. The defendant offered evidence that they had driven the road in the 1960's and 1970's and the road had not changed since that time. The plaintiff and its expert testified differently.
The plaintiff's engineer testified that over the years, as the Town plowed the road, silt, sand and grass built up along the side of the road as a result of the Town's maintenance and plowing activities and the road deteriorated so that a culvert was formed on the east side of the road which concentrated storm runoff from the road and the properties north and east of the plaintiff's property, diverted it along the east edge of the road and then, adjacent to the plaintiff's property where no crown of the road exists, the water flowed from east to west over the road and across plaintiff's property causing the erosion. The present flow pattern of the water as alleged by the plaintiff was not contested by the defendant. The controversy concerned whether the drainage system maintained by the defendant had been there for many years or whether it was of relatively recent vintage. The court finds that there was proof by the plaintiff that this drainage only existed since 1994. Defendant offered no evidence to the contrary other than to say the road had been there since the 1960's and that the road had not changed. The court finds that the road had changed and that there was a buildup on the east side of the road as a result of plowing and that a culvert was formed diverting the direction of the water. The defendant's testimony that the flooding would have occurred whether or not the road existed, the court does not find credible. The court, therefore, concludes that while Lake Shore Drive was in the same location for many years it was not in the same configuration until the last six years.
The plaintiff has also demonstrated that its property contained a dwelling house. C.G.S. § 13a-138 (b) provides:
 "Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house . . ."
Therefore, plaintiff has proven that all of the elements of violation of the statute exist.
The court, therefore, finds that the plaintiff is entitled to relief as set forth in the statute, mainly injunctive relief. The plaintiff's engineer testified that the Town has the ability to correct the problem. CT Page 13011 Through its engineer, Good in, the plaintiff presented evidence that the Town could drain the water away from the plaintiff's property using two catch basins at the top of the plaintiff's driveway and pipe the water under the road to the stream some four hundred feet south of the plaintiff's property into an existing lake. The defendant did not contest this testimony. Accordingly the court orders a permanent injunction requiring that the defendant correct the problem as presently existing either by constructing the aforementioned catch basins or through some other equivalent method.
The court, therefore, orders a permanent injunction in conformity for a prayer for relief in the plaintiff's complaint.
D. Michael Hurley, Judge Trial Referee